JOHN J. HOHMAN *v.* ELIZABETH E. OREM ET AL., EXECUTORS.

[No. 88, October Term, 1935.]

*Decided January 16th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*David Ash,* with whom was *Philip E. Wolfe* on the brief, for the appellant.

*James Morfit Mullen* and *R. Contee Rose,* for the appellees.

PARKE, J., delivered the opinion of the Court.

A court of equity had assumed jurisdiction of the administration of the estate of Henrietta Hohman and of its distribution under the provisions of her will. The course of the administration involved management of the real property of the estate and required some time, and it was not until March 20th, 1935, that the account was stated which furnished the occasion for the controversy at bar. The testator had named as her executors two of her children, Charles G. Hohman and Elizabeth E. Orem, and they were granted letters testamentary, and continued in the administration of their trust after equity had assumed jurisdiction.

In the account mentioned, the executors were allowed commissions, which, after deductions for taxes, netted the sum of $3,537.11, in which each was presumptively entitled to an equal share. No objection appears to have

been made to the account, but on March 29th, 1935, John J. Hohman filed a petition in the cause, wherein he showed that on December 5th, 1932, he had recovered a judgment against Charles G. Hohman in the Superior Court of Baltimore City in the sum of $3,470, with interest and costs, and that the judgment remained wholly unpaid. The petitioner prayed (1) that the auditor be instructed to audit one-half of the commissions to him in part payment of his judgment; and (2) that the court grant leave that the petitioner might have issued out of the Superior Court an execution or attachment on said judgment; (3) that he might have general relief.

The chancellor forthwith passed an order whereby he directed (1) that the executors pay out one-half ($1,768.-55) of the commissions to the petitioner in part satisfaction of his judgment, unless the executors should show cause to the contrary before a given day; and further (2) that leave be granted the petitioner to cause an execution or attachment to be issued out of the Superior Court on the judgment. The judgment creditor had an attachment so issued and laid in the hands of the executors, who became the garnishees in the law court.

It was under these circumstances that the chancellor, on April 1st, finally ratified and confirmed the audit on the stated ground that no cause to the contrary had been shown. The executors and accountants in equity later duly answered the petition, and set up the defenses (1) that prior to the petition the judgment debtor had for a good and valid consideration assigned in writing under seal unto his coexecutor, Elizabeth E. Orem, all sums of money due to him by way of fees or commissions as an executor of the estate; and (2) that, since the attachment contemplated by the chancellor's order had been issued on the judgment out of the Superior Court, and was then in course of litigation, the chancellor should not proceed to a determination of the questions made. The matter thus remained until the controversy came before the chancellor for a hearing. The petitioner was required to elect between the proceeding before the chancellor and

the attachment at law. He chose equity, and the chancellor heard the cause on its merits.

So long as the question of the distribution of the commissions was the sole concern of the two executors, it was immaterial what was the agreement between them, because they could dispose of the commissions in any way that they would see fit, notwithstanding that the manner of the allowance indicated equality of interest. When, however, an attachment on judgment against one of the executors was laid in the hands of the executors, the attachment would only prevail against the garnishees to the extent of the judgment debtor's share of the commissions, and would be abortive, if the debtor should not be entitled to any portion of the fund. 28 *C.J.* sec. 226, p. 187; *McPherson v. Snowden,* 19 Md. 197; *Groome v. Lewis,* 23 Md. 137, 152; *Hardesty v. Campbell,* 29 Md. 533, 537; *Williams v. Jones,* 38 Md. 555, 566; *Early v. Dorsett,* 45 Md. 462, 467-469; *Stockbridge v. Fahnestock,* 87 Md. 127, 128, 39 A. 95. The respective interests of the executors in the commissions were rights involved in the settlement of the estate in the orphans' court, and, therefore, any question in connection with their allowance was a matter within the jurisdiction of the orphans' court where the estate was in course of administration and, so, within the jurisdiction of the court of equity which had assumed jurisdiction and supervision of the administration of the estate.

As was said in *Crothers v. Crothers,* 121 Md. 114, at page 119, 88 A. 114, 116: "Moreover, while orphans' courts are courts of limited jurisdiction they are invested with the power to direct the accounting of executors and administrators, superintend the distribution of estates of intestates, and administer justice in all matters relating to the affairs of deceased persons (Code 1912, art. 93, sec. 235), and this language was held to vest in orphans' courts powers adequate to protect the interest of those concerned in the faithful performance of the duties of an administrator." On the second appeal the court considered and determined that the commissions

allowed to the surviving executor were in full compensation for the entire administration of the estate and that the estate of the coexecutor, who had died, was entitled to a one-half. *Crothers v. Crothers*, 123 Md. 603, 611, 91 A. 691. See also *Boland v. Ash*, 145 Md. 465, 476, 477, 125 A. 801; *Richardson's Admx. v. Stansbury*, 4 H. & J. 275; *Martin v. Jones*, 87 Md. 43, 46, 47, 39 A. 102; *Mott v. Fowler*, 85 Md. 676, 678, 679, 37 A. 717. In the last two cases cited, the probate court had before it for decision conflicting claims in regard to the commissions allowed.

Since the administration of the estate had been assumed by equity, its jurisdiction would be retained for the purpose of the ascertainment of the rights of the executors in the commissions. *Jenks v. Clay Products Mfg. Co.*, 138 Md. 551, 572, 115 A. 123; *Phelps' Juridical Equity*, sec. 179 (3). The facts which determine the problem are not disputed.

An assignment was offered in evidence. It was executed on January 3rd, 1935, and was signed and sealed by the assignor, Charles G. Hohman. It recited that for and in consideration of $1.00 the assignor transferred, assigned, and made payable to Elizabeth E. Orem all sums of money due to the assignor by way of fees or commissions as executor. The seal imported consideration, but the assignee introduced testimony which, in the absence of any evidence to the contrary, established that the assignor, by reason of his preoccupation with his affairs of business, did not wish to look after the many details obviously involved in the administration of the estate, and so agreed with the other executor that, if she would relieve him of the minor, but numerous, details of their executorship, he would confer and co-operate in the determination of the matters of discretion and judgment, and that all his interest in the fees and commissions allowed to them should be the sole and exclusive property of Elizabeth E. Orem as her compensation. Compare *Mobley v. Mobley*, 149 Md. 401, 406, 131 A. 770. The subsequently executed sealed assignment was given to

evidence this contract after it had been fully executed on the part of the executrix. If therefore the contract or assignment be operative at law or in equity, it must prevail against a subsequent attachment. *London & Lancashire Indemnity Co. v. Cosgriff,* 144 Md. 660, 664, 125 A. 529; *McDowell, Pyle & Co. v. Hopfield,* 148 Md. 84, 87-90, 128 A. 742, 52 A.L.R. 105; *Pen Mar Co. v. Ashman,* 152 Md. 273, 136 A. 640.

The attaching creditor maintains that an executor is within the principle that a public officer cannot validly assign by anticipation the fees paid to him to secure the due discharge of the duties of his office. The reason for the doctrine is that an assignment of fees in advance of the performance of the duties of a public office has a tendency to impair the efficiency of the service, by depriving the official of the incentive of a certain reward and of its regular receipt for the maintenance contemplated. While it is true that the principle has been extended in several jurisdictions to the assignment of commissions of executors, (a) yet that is not the rule in Maryland. (a) *In re Worthington,* 141 N.Y. 9, 35 N.E. 929; *In re King's Estate,* 110 Mich. 203, 68 N.W. 154; 5 *C.J.,* sec. 43, p. 874.

In *Brown v. Stewart* (1849) 4 Md. Ch. 368, the chancellor distinguished on clear grounds the earlier decisions of *Owings' Excrs. v. Owings,* 1 H. & G. 484, and *Richardson's Admx. v. Stansbury,* 4 H. & J. 275, and held that where there are two executors, both are equally entitled to commissions and, in the absence of any express agreement, neither can deprive the other of his share upon the ground that the party claiming the whole has performed the entire labor of settling up the estate, but by an agreement *inter sese* they may provide an unequal division of the commission, or that one shall have the whole. So, where one joint executor renounced his right to letters testamentary upon the estate in favor of his coexecutor, in consideration of receiving one-half of the commissions, the agreement was held valid. *Bassett v. Miller,* 8 Md. 548, 550, 551; *Ohlendorf v. Kanne,* 66 Md. 495, 499,

8 A. 351; *Dolfield v. Kroh,* 62 Md. XI, "Opinions Unreported." Again, in *Mott v. Fowler,* 85 Md. 676, 678, 37 A. 717, a promise by a party to serve as administrator of an estate without compensation is valid and based upon a sufficient consideration when the persons to whom the promise is made waive their right to administer. *Cummings v. Robinson,* 95 Md. 759, 761-763, 53 A. 795. So, it follows, that by virtue of her executorship and of the assignment, all of the commissions allowed were the property of Elizabeth E. Orem, and there were no rights and credits of the judgment debtor due and owing from the executors at the time of the laying of the attachment or the ratification of the account of the auditor.

The chancellor was right in dismissing the petition of John H. Hohman, Jr., and in placing the costs on the petitioner, and his decree will be affirmed.

The record is a glaring violation of rule 11; Code, art. 5, sec. 38. Eight pages of the record are filled with the useless details of an auditor's account, when a line would have done to state the amount and manner of the allowance of the commissions to the executors. Nine more pages are used for the insertion of a petition for rehearing and the brief of the petitioner which was filed in the equity court. The incorporation of these superfluous documents was by the direction of the counsel for the petitioner.

*Decree affirmed, with costs to the appellee.*