WESTERN DIST. September, 1836.

TURNBULL, TUTOR, ETC. vs. TOWLES'S EXECUTRIX.

*If the appeal bond is defective for want of the amount or sum fixed by the judge, the appellee may have the appeal dismissed.*

*The appellant cannot deprive the appellee of his right to a dismissal of the appeal, by any act posterior to service of citation.*

TURNBULL, TUTOR, &c. *vs.* TOWLES'S EXECUTRIX.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF ST. MARY.

Where the community was dissolved by the death of the wife, and no inventory or steps taken towards its liquidation, and it appears to have been indebted to a greater amount than *that* of the property exhibited as having belonged to it at its dissolution: *Held*, that the only child by the first marriage will not be entitled to take any part of this community by inheritance, in right of his mother.

Where the husband gives a receipt for money received from the estate of his wife's ancestor, the funds will be considered as part of the wife's inheritance, and received on her account, for which he will be liable to her heirs.

But where the husband gives a receipt for a tract of land and slaves, received from his wife's ancestor, at specified sums, it will not give him any legal title to them, and his succession will not be responsible for these articles, or the price at which they were estimated in the receipt, to the heir of his wife.

The tutor is entitled to ten per cent. commission on the amount of the   WESTERN DIST.
revenues of his pupil, arising from five per cent. interest on the pupil's   September, 1836.
funds in his hands, and from the hire of his slaves and other sources of     TURNBULL,
revenue.    The commission must be calculated on the *amount* of the    TUTOR, ETC.
revenue, and the interest of five per cent. is to be calculated on the   TOWLES'S EXE-
remaining sum, after deducting the commission and expenses of     CUTRIX.
education.

This is an action by the tutor of the minor son and sole
heir, by the first marriage, of the late Dr. John Towles, to
recover from the administratrix of his succession sundry
sums, which it is alleged the said Dr. J. Towles received on
account of his first wife, and which he never paid over to his
said son, after the dissolution of his first marriage.

The plaintiff alleges, that at the death of his first wife, in
1817, Dr. J. Towles became the natural tutor of his only
son and child and administered his property; that he kept
the negroes brought in marriage and made large profits with
them, which he appropriated to his own use.    He also
retained the community property, sold several tracts of land
in the parish of Rapides for the sum of twelve thousand dol-
lars, and negroes in St. Mary to the amount of two thousand
dollars, all of which he received.    On the 8th of June, 1818,
he signed a receipt to the mother of his deceased wife,
stating that he had received, at different times, on account
of his deceased wife, eleven thousand three hundred and
seventy-five dollars.    That property of the community
acquired by said John Towles, during his first marriage, was
found in his succession and put on the inventory, sold as
community effects, and as such amounting to twenty-six
thousand six hundred and seventy dollars.

The plaintiff further states that the administratrix has
retained the negroes brought into the first marriage, since
the death of her husband in 1833, with the other property of
the succession, and had the benefit of their labor, and that
the succession is indebted for the value of their services,
both before and since Dr. Towles's death; that it owes inter-
est at five per cent. on the sums which came into Dr. Towles's
hands after the death of his first wife, from the respective

WESTERN DIST.
September, 1836.

TURNBULL,
TUTOR, ETC.
vs.
TOWLES'S EXE-
CUTRIX.

periods when they were received by him. The plaintiff alleges that the minor, whom he now represents, has a legal mortgage on all the succession property of Dr. John Towles, as his former tutor, for the reimbursement of the several sums owing by him. He therefore prays judgment for the amount that may be found due to him, with interest and mortgage allowed.

The defendant admits there may be some of the property acquired by her deceased husband, during his marriage with the mother of said minor, in the succession, but that most of what is comprised in the inventory belonged to the late community existing between her and Dr. Towles. She further avers that the first community was insolvent, but that its debts were paid by Dr. Towles, after the dissolution of the first community, or by his succession since his death. She specifies a number of old debts, to a very large amount, paid since the dissolution of the first marriage, and which caused the second community, together with other losses, to be much embarrassed with heavy debts. That as to the slaves claimed as the paraphernal property of the first wife, they have long since been taken away. She avers there is nothing due to said minor from the succession she administers, and prays that the plaintiff's demand be dismissed.

The evidence and accounts produced on the trial, and the calculations made, are fully stated and recapitulated in the opinion of the court.

"Dr. John Towles received of the estate of John Turnbull, deceased, viz. :

| Received of C. Norwood, cash as per receipt, | $3,400 | |
|---|---|---|
| Do.   "       "       "   "   "       " | 1,075 | |
| Do.   "       "       "   "   "       " | 1,500 | |
| Do.   "       "       "   "   "       " | 1,800 | |
| Do.   "       "       "   "   "       " | 913 | 38 |
| Do.   of Mrs. Turnbull,   "   "       " | 842 | 31 |

Carried forward, . . . . . .$9,530 69

Brought forward, ........................ 9,530 69

Family of negroes from Mrs. Turnbull, ⎱  1,625 00
(Bob, Riner and three children,)       ⎰

Two negroes of Mr. T——, (Emelie and Jerry,) 1,000 00

A tract of land near Pinckneyville, in ⎱ 4,000 00
the state of Mississippi,              ⎰

Sundries of Mrs. Turnbull, ................. 315 00

$16,470 69

Credit by cash refunded, ........... 2,470 69

$14,000 00

Dated June 8, 1818."

WESTERN DIST.
September, 1836.

TURNBULL,
TUTOR, ETC.
vs.
TOWLES'S EXE-
CUTRIX.

The probate judge decided that the community existing between Dr. Towles and his first wife was insolvent, and dismissed the further consideration of it. He deducted the value of the land and negroes in the receipt of Dr. Towles to Turnbull's estate, and allowed the minor to take the property in kind, which left seven thousand three hundred and seventy-five dollars, which was allowed. The further sum of seven thousand one hundred and seventy-five dollars, with interest at five per cent. was allowed for the hire of slaves, and a deduction of one hundred dollars per annum, from 1817 to 1828, for the maintenance and education of said minor; and a further deduction of ten per cent. from the interest, for each and every year, to the 20th August, 1833; two hundred and fifty dollars for 1829, and five hundred dollars for each of the years from 1830 to 1832; and judgment was rendered accordingly. The defendant appealed.

Brownson, for the plaintiff, offered some calculations to show that the judgment was erroneous as respects the amount due the plaintiff.

1. He showed, by calculations drawn from the evidence, that the succession of Dr. Towles was indebted to the plaintiff in the sum of eight thousand seven hundred and thirty-five dollars, for the use and hire of ten slaves belonging to

33

Western Dist.
September, 1836.

TURNBULL,
TUTOR, ETC.
vs.
TOWLES'S EXE-
CUTRIX.

the succession of his first wife, from the year 1817 up to 1834.

2. He then contended that the succession administered by the defendant was responsible for the minor son of her late husband for the amount of his receipt in 1817, being for cash and negroes received from *C.* Norwood, administrator of John Turnbull's estate, the father of his first wife, and which she inherited. At least he is indebted for the balance, after taking out the negroes in kind.

*Conrad* and *Simon,* for the defendant.

1. The court erred in decreeing payment to the plaintiff of the hire of the negroes claimed by him. There is no legal evidence of these negroes being the property of the minor. The inventories were introduced for a different purpose, and are no proof of title ; neither is the fact of their being taken away from the place, as there is no proof that this was done with the consent of the defendant; and besides, the plaintiff was one of the heirs of Turnbull, and might have taken them away as heir, as well as in his capacity of tutor. The administratrix could not, by any act of, or omissions of hers, affect the rights of creditors of the estate to the property belonging to it.

2. At all events, there is no proof whatever that the sums of money mentioned in the receipt given by the deceased belonged exclusively to the minor. He is only entitled to his virile share thereof as one of the heirs of John Turnbull, to wit: to one *fifth* part. There is greater danger in the court's decreeing the whole of this debt to the minor, as it appears, by a receipt given by Mrs. Turnbull some time afterwards, that there was a general settlement of all accounts between her and the deceased. See receipt signed by Mrs. Turnbull, dated in 1823, referred to in deposition of N. Cox.

3. The calculations of interest were clearly erroneous, as also the allowance of commissions to *the* tutor.

4. The court should have deducted from the amount decreed to be due the plaintiff, one half of the interest on the

WESTERN DIST.
September, 1836.

TURNBULL,
TUTOR, ETC.
vs.
TOWLES'S EXE-
CUTRIX.

loan made from Surget on the joint account of the deceased, and of the minor. This loan was made on the recommendation and by the authority of a family meeting, who judged it for the advantage of the minor. It was undoubtedly binding on the minor, and the creditor could have collected it from him. Since the opening of the succession it has been paid by the administratrix. See tableau of distribution under the head "mortgage creditors." We do not claim the principal, because the deceased received it as tutor, and was bound to account for it; but he never did receive the interest, and therefore the minor could not claim it. At all events, the court should deduct the difference between the interest on this loan and that due to the minor, that is, five per cent. per annum on eleven thousand dollars for upwards of two years. Thus the deceased received on account of the minor eleven thousand dollars; on this he owes say five per cent. But the minor owes ten per cent. to the estate, which has paid that amount of interest for him.

5. The decree should have been to pay in due course of administration, and not absolutely.

*Bullard, J.*, delivered the opinion of the court.

The claim set up by the plaintiff in this case, against the succession of his father and tutor, may be considered by us, as it has been in the argument, under three distinct heads.

*First.* For an alleged amount due on account of the community formerly existing between the deceased and the brothers of the plaintiff, which never has been liquidated.

*Second.* For certain sums of money and the value of a tract of land in Mississippi, received by the deceased from the estate of John Turnbull; the plaintiff's grandfather.

*Third.* For the revenues of the minor, consisting principally of the hire of certain slaves, alleged to be the separate property of the plaintiff, and employed by his father after the death of his first wife.

I. At the dissolution of the first community no inventory appears to have been taken, nor any steps towards a liquidation of it. Its situation, either as to property or debts, is but

Where the community was dissolved by the death of the wife, and no inventory or steps taken towards its liqui- dation, and it appears to have been indebted to

TURNBULL,
TUTOR, ETC.
vs.
TOWLES'S EXE-
CUTRIX.

a greater amount
than *that* of the
property exhibi-
ted, as having
belonged to it at
its dissolution:
*Held*, that the
only child by the
first marriage
will not be enti-
tled to take any
part of this com-
munity by in-
heritance, in
right of his mo-
ther.

imperfectly known. The defendant has shown, however, that it was greatly indebted, and the amount of property exhibited on the other side, most of which was disposed of by Dr. Towles, appears insufficient to pay the debts. We therefore concur with the judge of the Court of Probates in his conclusion, that on this head the plaintiff has failed to show that he is entitled to any thing.

II. The evidence under the second head consists of a written acknowledgment or receipt signed by Dr. Towles, after-the death of the plaintiff's mother, by which he acknowledges that he had received from the estate of John Turnbull, deceased, certain slaves, certain sums of money, and a tract of land in the state of Mississippi, estimated at four thousand dollars. The plaintiff, who has already received the surviving slaves, claims in this suit the amount of money thus alleged to have been received on his account, as one of the heirs of John Turnbull, together with the value of the tract of land.

Where the
husband gives
a receipt for mo-
ney received
from the estate
of his wife's an-
cestor, the
funds will be
considered as
part of the wife's
inheritance, and
received on her
account, for
which he will
be liable to her
heirs.

It has been strenuously contended by the counsel for the defendant that this document furnishes no evidence in support of the pretensions of the plaintiff; that it does not show on whose account the money was received, that all the heirs of John Turnbull have as good a right as the plaintiff to recover the amount, and that a judgment in favor of the plaintiff would be no bar to their claim. We cannot yield our assent to these propositions. The evidence in the record shows that Mrs. Towles was one of the heirs of Turnbull, and the plaintiff sues as her heir. Dr. Towles, when he received this amount, possessed a quality or capacity either as the husband or tutor of one of the heirs of Turnbull, which entitled him to receive it. We must presume he did receive it in that capacity, unless negatived by the terms of the receipt itself. The money does not purport to have been received on deposit, and the receipt *per se* does not furnish evidence to authorize the heirs to recover it back without showing it was paid in error.

But the plaintiff, in our opinion, is not entitled to recover the four thousand dollars for a tract of land in Mississippi.

It does not appear that the land was conveyed to Dr. Towles for that price, nor that he has disposed of it.   The title to the land, and to the slaves specified in the receipt, rests on the same ground.   It will not be pretended that the slaves, acknowledged to have been received by him, were at his risk, and that if they had died he would have been liable to But where the his pupil for the value specified in the receipt.   We cannot husband gives a receipt for a distinguish between the slaves and the land; both appear to tract of land and have fallen to the share of the plaintiff, or his mother, in the slaves, received from his wife's distribution of the estate of Turnbull, and we are not autho- ancestor, at spe- cified sums, it rized, by any evidence in the record, to conclude that they will not give him any legal ti- became the property of Dr. Towles, and that his estate is tle to them, and responsible for the price or value.   It is contended, however, his succession will not be re- that we are to presume that Towles disposed of the land sponsible for these articles, or before his death.   If the title had been in him, we might, the price at which they were perhaps, fairly presume it had been sold, inasmuch as no estimated in the notice is taken of it in the inventory.   But we cannot pre- receipt, to the heir of his wife. sume that he sold the property of his pupil.

III.   In relation to the third branch of the case, which relates to the time of the slaves and the allowances to be made to the tutor for the expenses of the education of the plaintiff, an attentive examination of the evidence satisfies us that the Court of Probates came to a just conclusion.

The defendant and appellant has filed various grounds, upon which she asks a reversal of the judgment below, some of which, relating to the title of the plaintiff to the slaves, and, consequently, the hire which has been allowed, and to the right of the plaintiff to recover the sums of money speci- fied in his father's receipt, have already been disposed of substantially.   She further contends, that the court erred in allowing to the plaintiff interest on those sums; in allowing to the tutor for his commissions only ten per cent. on the *interest* of his revenues, instead of that per centage on the revenues themselves;   and further, in not charging the plaintiff with one half of the interest paid on a loan of twenty-two thousand dollars made by them jointly; and, finally, in making an absolute decree for the payment of whatever amount might be due to the plaintiff, instead of

WESTERN DIST. ordering it to be paid in the regular course of administra-
*September*, 1836. tion.

TURNBULL,
TUTOR, ETC.
*vs.*
TOWLES'S EXE-
CUTRIX.

The question here raised, as relates to the interest on the loan of twenty-two thousand dollars, does not appear to have been agitated in the court below, and the answer to the original petition is silent as to that matter. No offset is claimed on that account, and we think the defendant has failed to show any liability on the part of the plaintiff, to pay any part of the capital or interest.

The tutor is entitled to ten per cent. commission on the amount of the revenues of his pupil, arising from five per cent. interest on the pupil's funds in his hands, and from the hire of his slaves and other sources of revenue. The commission must be calculated on the amount of the revenue, and the interest of five per cent. is to be calculated on the remaining sum, after deducting the commission and expenses of education.

The tutor is by law authorized to retain, as his commission, ten per cent. upon the revenues of the minor. In this case the revenue must be considered as composed of the interest of five per cent. on the moneys in the hands of the tutor, and of the annual hire or value of the services of the plaintiff's slaves. On the amount of the hire, after deducting the ten per cent for each year, the tutor owes an interest of five per cent., as well as upon other sums which came into his hands; but we are not aware of any law which obliges him to pay interest upon interest. The interest must be calculated on the amount after deducting the commission and the expense of education. The judgment rendered in the Probate Court allows for expenses of education, different sums, increasing with the age and advancement of the plaintiff, which appears to us reasonable and supported by the evidence. But from the phraseology of the decree, it is not apparent that all allowances were made for interest and commissions, according to the principles abovementioned. With respect to the number of hands belonging to the plaintiff, at different periods, and the value of their services, the evidence in the record does not satisfy us that the court below erred. But the judgment, for the reasons above stated, must be reformed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be reversed and annulled; and it is further adjudged and decreed, that the plaintiff recover of the defendant, as administratrix, to be paid in the course of administration, as hypothecary creditor from the

year 1817, *first*, the sum of seven thousand three hundred and seventy-five dollars, together with an accruing annual interest of two hundred and twenty-seven dollars and thirty-eight cents, for each and every year from the 8th of June, 1818, until the 24th February, 1834, and after that period an interest of ten per cent. on said sum, until paid, according to the agreement in the record; and that he recover *secondly*, for the hire of slaves, after deducting commissions and expenses of education not already allowed above, the sum of one hundred and thirty-five dollars, with interest at five per cent. from the 19th April, 1818, till paid; the sum of two hundred and seventy dollars, with like interest from the 19th April, 1819; the further sum of two hundred and seventy dollars, with interest from the 19th April, 1820; the sum of three hundred and thirty-eight dollars and fifty cents, with interest from same day, 1821, and of three hundred and thirty-eight dollars and fifty cents, with interest from April 19th, 1822; of four hundred and five dollars, with like interest, from April 19th, 1823; the like sum of four hundred and five dollars, with interest from same day of April, 1824; the like sum of four hundred and five dollars, with like interest from the 19th April, 1825; the like sum of four hundred and five dollars, with interest from April 19, 1826; the same sum of four hundred and five dollars, with interest from April 19, 1827; the same sum of four hundred and five dollars, with interest from April 19, 1828; the further sum of three hundred and ninety dollars, with interest from the 19th April, 1829; the sum of one hundred and forty dollars, with interest from the 19th April, 1830; the further sum of two hundred and seven dollars and fifty cents, with interest from April 19th, 1831; and the same sum for each of the years 1832 and 1833, with interest on each from the same day of each year, respectively; and it is further ordered, that the costs of the Court of Probates be paid by the estate, and those of the appeal by the plaintiff and appellant, reserving to him any right he may have to the tract of land in Mississippi.